ANNA BROWN v. STATE.

No. A-3362.    Opinion Filed April 16, 1920.

(188 Pac. 1097.)

(Syllabus.)

1. **APPEAL AND ERROR—Discretion of Trial Court—Continuance.** Applications for a continuance of a criminal cause are addressed to the discretion of the trial court, and a manifest abuse of discretion must appear before a judgment of conviction will be reversed because the trial court refused to continue the case.

2. **APPEAL AND ERROR—Right to Complain—Withdrawal of Evidence Upon Request.** Where alleged incompetent evidence was withdrawn from the consideration of the jury on motion of defendant's counsel, the action of the trial court in so doing was favorable to the defendant, and forms no basis for error in the appellate court.

3. **TRIAL—Instructions—Sufficiency as a Whole.** The instructions must be considered as a whole, and, when considered together, if they fairly and correctly state the law applicable to the case, they will be sufficient.

*Appeal from District Court, Tulsa County;*
*Conn Linn, Judge.*

Anna Brown was convicted of the crime of manslaughter in the first degree, and she appeals. Affirmed.

*T. L. Wallace,* for plaintiff in error.

S. P. *Freeling*, Atty. Gen., and *W. C. Hall*, Asst. Atty. Gen., for the State.

MATSON, J.  Anna Brown was convicted in the district court of Tulsa county of the crime of manslaughter in the first degree for the killing of one E. L. Kimmons in the city of Tulsa on the 1st day of August, 1917, and sentenced to serve a term of 11 years' imprisonment in the state penitentiary.

The shooting occurred in a drug store on Greenwood street known as Bryant's Drug Store, and the evidence shows that the defendant and deceased had been sweethearts for some time prior to the killing. , The evidence from the state's witnesses is to the effect that the defendant came into the drug store a short time before the killing, and asked permission to use the telephone, and did use the same, and called somebody to "come up to Bryant's Drug Store"; that, after using the telephone, the defendant seated herself at a small table near the front of the drug store, and that shortly thereafter the deceased came into the store and was immediately shot by the defendant, and died from the effects of the gunshot wounds in a very short time.

According to the state's witnesses, the deceased, after he was shot, stated, "Anna, don't kill me"; that the defendant was seen with a smoking revolver in her right hand immediately after the shot was fired; and that she kneeled down at the side of the deceased and whispered something to him, all of which the witnesses did not hear, but she was heard to say after whispering to the deceased, "That's why I did it."

The defendant testified that the killing was accidental, that she had procured the pistol from a friend of hers some three or four days prior to the killing for the purpose of bluffing deceased into marrying her, but that on the day of the homicide she determined to return the pistol, and was carrying it for that purpose; that she saw deceased enter a pool room a few doors from Bryant's Drug Store, and that she called him on the telephone and asked him to come over there; that after she had called the deceased she sat down by the table in the front part of the drug store and started to unbreach the pistol for the purpose of taking the cartridges out of it; that the deceased came in and saw her with the pistol and grabbed hold of the muzzle of it and tried to jerk it out of her hand; that she had hold of the handle of the pistol, and in the scuffle it was accidentally discharged and the deceased killed without any intention on her part to kill him; that after the pistol was discharged the deceased said, "Oh! Anna!" and the defendant said, "Why, you did it?" and the deceased then prayed a while, and the defendant then knelt down by him, and the deceased put his hands in defendant's lap and said, "Anna, I will admit that I did you wrong; I ask you to forgive me; I caused it all myself," and then defendant said, "I am sorry that you did it."

On cross-examination the defendant testified in part as follows:

"Q. Now, you were attempting to take the shells out of this gun?  A. I wasn't taking them out; I was trying to unbreech the gun.

"Q. Trying to unbreech it? A. Yes, sir.

"Q. Unbreech it now (handing state's Exhibit A to the witness). A. This is the thing I was working at the time he come in (indicating); I had this thing here (indicating).

"Q. Now just break it. (Witness does so.) That is what you were trying to do? A. Yes; I just started to.

"Q. And you were holding the gun up this way towards that door? A. No; I wasn't.

"Q. But did you have the gun down this way (indicating)? A. No; I didn't have it that way, I had it— I don't know exactly what way I had it, but I know I had it something in this manner.

"Q. With your finger on the trigger? A. I suppose so.

"Q. Pointing towards Kimmons? A. I wouldn't say pointing towards Kimmons.

"Q. Towards the door where Kimmons would come in where you had seen him? A. Yes; I suppose so."

It is first contended that the trial court erred in refusing to continue the cause for the term on the application of counsel for defendant. The main contention urged is that counsel who represented defendant in the trial of the case was not given an opportunity to properly prepare the case for trial.

The record discloses that the information upon which the prosecution was based was filed in the district court of Tulsa county on the 24th day of August, 1917, and that thereafter defendant was arraigned and entered a plea of not guilty. On the 24th of October, 1917, the cause was set down for trial for the 7th day of November following, and before said date, the county

attorney, in compliance with the Constitution, served upon the defendant several lists of witnesses to be called in chief to prove the allegations of the information, together with the post office address of each witness. Thereafter, on the 7th day of November, 1917, when the case was regularly called for trial, defendant, being present in court, stated that she was not ready for trial because of the absence of Mr. Hunt, an attorney of the Tulsa county bar, who represented her, Mr. Hunt being at that time out of the city, and the court thereupon appointed Mr. Monroe and Mr. Hale, members of the Tulsa county bar, to represent the defendant. Mr. Hunt thereafter appeared in court, and stated that he did not consider himself as attorney for the defendant and withdrew from the case, and the court thereupon instructed Messrs. Monroe and Hale to prepare and proceed with the case for the defendant, and at the request of said attorneys appointed by the court the cause was continued for 24 hours in order to give them an opportunity to prepare the case for trial. The next day when the case was called for trial, the firm of Crossland & Crossland, attorneys of the Tulsa county bar, appeared and stated to the court that they had been retained, and desired the case to be continued for a few days so that they might make arrangements for their fee and prepare for the trial, and upon their request the court continued the case again until the 17th day of November, 1917. The case was not reached until the 19th day of November, 1917, at which time Mr. T. L. Wallace, a member of the Tulsa county bar, appeared as attorney for the defendant, and filed a motion for a continuance on the ground that he had just been called into the case by the defend-

ant, and had had no opportunity to prepare the case for trial. The court overruled the defendant's motion for a continuance, and Mr. Monroe and Mr. Hale, who had been appointed by the court some 12 days previous, agreed to and did assist Mr. Wallace in representing the defendant upon the trial of the case.

Applications for a continuance are addressed to the discretion of the trial court. In this case the record shows that the defendant at different times appeared in court with three different attorneys or firms to represent her, and on each occasion, except the last, the court granted these attorneys an opportunity to prepare the defense in this case, although the court had previously thereto appointed two reputable and able attorneys of the Tulsa county bar to represent this defendant. We think that the trial court was extremely lenient in granting these various continuances upon the grounds requested. The two attorneys appointed by the court at least 12 days before the trial of the cause was commenced assisted in the defense, and the record shows that the three attorneys who represented the defendant conducted the defense in an able manner and protected the substantial rights of the defendant at every step throughout the trial. She was not deprived of the benefit of counsel, nor is there any showing that any other evidence could or would have been produced had a further continuance been granted by the trial court. The killing occurred on the 1st day of August, 1917, and the trial was not commenced until the 19th day of November following. The defendant and her friends and relatives had over three months within which to make preparations for this trial, and after the court had granted continuances

on two occasions after this cause was set for trial, at each of which times different attorneys appeared, it cannot with propriety be held that the trial court abused its discretion in refusing to grant a further continuance to permit other counsel to prepare the case for trial, especially as the court had appointed attorneys to represent this defendant, who were present in court for that purpose, and who had at least 12 days within which to prepare the case for trial, and who did (whether at the solicitation of the court or not does not appear) represent her.

The next assignment of error relates to the alleged admission of incompetent and irrelevant evidence. This assignment is without merit, as the record discloses that on motion of the defendant's counsel the alleged incompetent evidence was withdrawn from the consideration of the jury. No error is presented, therefore, of which the defendant may complain. An examination of the record, however, discloses that, if there was error in this respect, the error was favorable to the defendant and prejudicial to the state.

It is also contended that the trial court committed error in giving a certain instruction to the jury, but an examination of the record discloses that no objection was made or exception taken to the giving of this instruction. Further, we have carefully examined the instructions given, and are convinced that the law of the case was stated more fairly to the defendant than the evidence would warrant. In fact, the defendant was given, in the court's instructions, the full benefit of the defense of accidental killing, although in her own testimony she ad-

mits that she had procured the revolver with which the killing was accomplished for the purpose of bluffing the deceased; that she carried the same, while loaded, around on her person and had it in that condition in a public place; and also at the time it was discharged the muzzle of the gun was pointed in the general direction of the deceased. Under the defendant's own testimony, she was guilty of two distinct misdemeanors, and the jury was authorized to conclude from the evidence that this killing, even if not premeditated, was the direct result of the commission of a misdemeanor in pointing the pistol at the defendant, whether for the purpose of bluffing him or not.

It is undisputed that the defendant called the deceased to the place of the homicide; that she was armed with a loaded pistol, and that her feeling against the deceased was that of ill will, occasioned by the deceased's refusal to marry her; also that she had procured the pistol for the purpose of bluffing deceased into marrying her. The state's evidence makes out a case of murder. Under the most favorable view of the defendant's testimony, in the light of her actions and conduct, it cannot be said that the killing was excusable, even if accidental. We think the jury took the most favorable view of the evidence to which the defendant was entitled, that she had a fair and impartial trial, and that no reversible error appears in the record.

For the reasons stated, the judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.